[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is a suit to recover on a promissory note signed by the defendant. The defendant, while acknowledging she made none of the payments required by the terms of the note, claims she signed it under duress. She has also filed a CT Page 1763 counterclaim for losses she claims to have sustained because of KR's failure to maintain an agreed upon production and shipping schedule. She also claims an offset for certain graphic materials, referred to as "mechanicals" which she claims as partial consideration for her execution of the note
The issues in this case are primarily factual ones to be determined by the trier. The Court makes the following findings and conclusions.
The defendant was in the business of selling place mats to restaurants. In 1981 she began contracting with KR to print place mats for her. By 1986, her account with KR was in arrears. In order to resolve the building arrearage problem the parties worked out an arrangement whereby Ms. Duley signed a promissory note in the principal amount of $16,532.70. Ms. Duley was to make payments on the note while keeping current with new billings for work done by KR. Ms. Duley did not, however, abide by the agreement entered into in 1986 and her debt to KR increased.
On April 15, 1988, KR wrote to Ms. Duley (plaintiff's exhibit 4), with a proposal to prepare a new promissory note which would incorporate the unpaid balance on the 1986 note and the unpaid additional billings. KR agreed to waive $4,421.21 in late charges in an effort to reach a solution to the problem of the unpaid debt.
On May 2, 1988, Ms. Duley went to the offices of KR and executed the promissory note (plaintiff's exhibit 1) which is the subject of this suit. The terms and conditions of the note are those terms and conditions outlined in KR's letter of April 15, 1988. On May 2, 1988, Ms. Duley met with an employee of KR, Rosalie Stavens, who gave her the note. Ms. Duley read the note, told Ms. Stavens she understood its terms and signed it.
Her claim that she signed the note under duress is not substantiated or supported by the evidence. This was an arm's length business transaction with KR in fact waiving a part of its claim against the defendant.
Ms. Duley's testimony at trial that she believed she was signing the note merely as an accommodation which would in some way enable KR to take her debt off their books is not credited by the Court. It would simply be illogical for Ms. Duley, a business woman in her own right, to believe that to be the case, especially in view of all the past dealings between the parties. It is noted that Ms. Duley, in support CT Page 1764 of her position, testified that KR made no effort to collect on the note until 1990 when they brought this suit. On rebuttal, however, the plaintiff introduced a letter dated August 26, 1988 which was sent to the defendant by certified mail, demanding payment in full because of her default in making any payment on the note. (Ms. Duley testified that she did not recall that letter).
From the credible evidence, the Court finds that KR did agree to ship an order of place mats for the Britannia Spoon Company Restaurant at the time this note was executed. The mats had actually been printed for some time but had not been shipped because Ms. Duley's account was too far behind. KR did in fact, ship those place mats as promised.
The plaintiff on May 2, 1988, through Ms. Stavens, did tell Ms. Duley that some of the "Mechanicals" (which may be described as art work used in the design and printing of place mats) could be released to her once she started to pay down the note. Of course, Ms. Duley never made any payments on the note so they were not released. It is customary in the trade that the "mechanicals" are the property of the printer unless they happen to be supplied to the printer by the customer. In this case the "mechanicals" were made by KR and were owned by KR. The Court does not find that KR promised to give them to Ms. Duley as partial consideration for her signature on the note. KR did indicate a willingness to release some of them in the future if Ms. Duley made some payments on the note. Since she did not, the Court finds for the plaintiff on this Counterclaim.
With respect to the counterclaim for lost profit allegedly caused by KR's failure to ship place mats on time, Ms. Duley testified that she lost three major accounts in New Jersey for that reason. According to her these accounts were lost in 1986. By 1988 when this note was signed she had not made any claim to KR for this claimed loss. The defendant has failed in her burden of proving this counterclaim and the court finds for the plaintiff on this issue.
For the foregoing reasons, judgment shall enter for the plaintiff as follows:
1. Unpaid principle balance of the note $21,650.00
 2. Interest on the note (9.5% per annum, $5.63 per diem) Through February 4, 1992 7,735.62
4. Counsel fees $ 2,577.15 CT Page 1765
Judgment for the plaintiff in the amount of $31,962.77, plus costs.
KLACZAK, J.